COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Lemons
Argued at Richmond, Virginia


CYNTHIA LEE EAST

                                    MEMORANDUM OPINION* BY
v.          Record No. 0013-98-2      JUDGE JERE M. H. WILLIS, JR.
                                          MARCH 23, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Thomas N. Nance, Judge

            Steven D. Benjamin (Betty Layne DesPortes;
            Benjamin & DesPortes, P.C., on briefs), for
            appellant.

            Mary E. Langer, Assistant Attorney General
            (Mark L. Earley, Attorney General; Rhonda
            McGarvey, Senior Assistant Attorney General &
            Chief, on brief), for appellee.


        Cynthia Lee East was convicted of four counts of

embezzlement, specified as follows:  (1) that on or about August

1, 1996, she did embezzle U.S. currency having a value of $200 or

more, (2) that on or about February 26-27, 1997, she did embezzle

U.S. currency having a value of $200 or more, (3) that on or

about March 6, 1997, she did embezzle U.S. currency having a

value of $200 or more, and (4) that on or about March 6, 1997,

she did embezzle U.S. currency having a value of $200 or more.

On appeal, she contends that the evidence fails to support those

convictions.  We affirm the convictions relating to the March 6,

---

        *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

1997 charges.  We reverse the convictions relating to the August

1, 1996 and February 26-27, 1997 charges.

## I.   BACKGROUND

> On appeal, we review the evidence in the
> light most favorable to the Commonwealth,
> granting to it all reasonable inferences
> fairly deducible therefrom.  The judgment of
> a trial court sitting without a jury is
> entitled to the same weight as a jury verdict
> and will not be set aside unless it appears
> from the evidence that the judgment is
> plainly wrong or without evidence to support
> it.

Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418

(1987).

East was one of two cashiers in the cashier's office of the

Department of General Services, where she received cash payments

relating to state surplus property auction sales.  The money was

ordinarily placed in a safe at the office until deposited.  Money

received after 12:30 p.m. was held for deposit the next day.  The

safe remained open during the day.

A customer making payment would produce a "sale award"

certifying his successful bid, the property purchased, and the

amount owed.  The cashier receiving payment would stamp on the

sale award and initial a receipt showing the amount received,

whether the payment was by cash or check, and if by check,

identification of the check.  The cashier was then required to

record the receipt on a "check register," an internal document

designating the payor, the amount of payment, and the form of

payment.  The check registers were reviewed by June Hodge, the

other cashier, were sent by her for data entry, and were then received back and filed.  East was responsible for reconciling bank deposits with the related check registers.

## II.   THE AUGUST 1, 1996 INCIDENT

On August 1, 1996, East received $2,650 in cash from Ted Covington Sales.  The receipt for this amount was noted on sale award document numbered 147624 bearing East's initials, but the corresponding entry to the check register indicated payment by check, credited to sale award document numbered 147470.  The August 1 check register recorded a cash payment of $2,650 received from Russell Auto.  However, Russell's receipt shows a check number.  The bank deposit on that day equaled the total amount shown on the check register, but reflected a cash deposit of $2,650, not $5,300.

The Commonwealth argues that the evidence supports a finding that East received two cash payments of $2,650 each, one from Covington and one from Russell, that she falsified the check register, embezzled $2,650 cash, and placed the remaining $2,650 cash for deposit.  The evidence fails to support this construction.  It appears plainly from the receipts given Covington and Russell on their respective sale awards that Covington paid cash and Russell paid by check.  Thus, only $2,650 was received in cash and that cash was deposited.  The evidence proves no more than an error in recording the form of the payments on the check register.  This conclusion is verified by the fact that the amount deposited in the bank equaled the total

amount called for by the check register.  The evidence fails to prove that an embezzlement occurred on August 1, 1996.

### III.   <u>THE FEBRUARY 26-27, l997 INCIDENT</u>

On the afternoon of February 26, 1997, June Hodge received $687.45 in cash from Timothy Sauls.  She testified that she placed this payment in the safe.  However, this cash was not included in the bank deposit made by East the next day.  The comptroller could not reconcile the February 26, 1997 batch of check registers with the batch of deposits made on February 27, 1997.  When questioned, East told the comptroller to throw away the check register reflecting the $687.45 receipt.  An internal audit was made.  On April 18, 1997, four days after the employees of the cashier's office were notified that the police would investigate the missing cash, the Assistant Administrator of Auction received in inter-office mail some paperwork concerning Sauls' purchase of surplus property and an envelope containing $687.45.  No evidence disclosed the origin of the package or how long it had been circulating through the inter-office mail system.

The Commonwealth argues that East's suggestion that the comptroller throw away the check register was an effort to destroy evidence of the $687.45 receipt, that this was an effort by East to cover up the existence of that sum, and that this effort disclosed guilty knowledge and was proof that East had misappropriated the money.  The record does not reveal all the circumstances or the full context in which East made that

suggestion.  It was bad advice.  It proposed a violation of the agency's accounting system and an inappropriate solution to the accounting discrepancy.  However, that suggestion, standing alone, is insufficient to prove that East took the money.  No other evidence establishes that she had any contact with the money or even knew of its existence.  The evidence fails to prove that East misappropriated the $687.45.

## IV.   THE MARCH 6, 1997 INCIDENTS

On March 6, 1997, East received a $3,050 cash payment from Anthony Williams and a $3,550 cash payment from Walter Tally. The check registers and deposit records of March 6 and March 7 reflect neither the receipt nor the deposit of those payments. East made the March 6 and 7 bank deposits.

East personally received the payments from Williams and Tally.  Their receipts bear her initials.  However, despite her duty to make corresponding entries in the check register, no entries were made.  She prepared and made the deposits for March 6 and 7.  The funds from Williams and Tally were not included in those deposits.  East argues that some other person may have destroyed the check register entries and may have misappropriated the cash.  However, it strains credulity to suppose that upon making the bank deposits, East would have overlooked the absence of $6,600 in cash that she herself had just taken in.  Thus, the evidence is sufficient to prove that East embezzled the $6,600 cash that she had received from Williams and Tally.

CONCLUSION

We reverse the convictions for charges relating to the August 1, 1996 and February 26-27, 1997 incidents and order those charges dismissed.  We affirm the judgment of the trial court convicting East of two embezzlements on March 6, 1997.

<u>Affirmed in part
and reversed and
dismissed in part.</u>

Benton, J., concurring in part and dissenting in part.

I concur in the judgment reversing the convictions for embezzlement arising out of the incidents on August 1, 1996 and February 26-27, 1997. I dissent because I would also reverse the conviction for embezzlement arising out of the incidents on March 6, 1997. The evidence proved that the cashier's office lacked internal accounting controls. Because of the lack of those controls, the evidence was insufficient to prove that Cynthia East committed an embezzlement on March 6, 1997.

A cashier, who worked in the office with East, was a witness for the Commonwealth. Explaining the procedures in place at the time of these events, she testified that generally "[w]e get the [bank] deposit ready about 12:30" on the day the payments are received in the office. The cash and checks that had been received in the morning and that comprised the funds to be deposited were "placed in the safe," which typically remained open during business hours. Those funds were "deposited the next day." The cashier also testified that occasionally cash received in the afternoon "went into the safe . . . for deposit on the next day." Although East typically prepared the bank deposit form for these transactions, the other cashier prepared the deposit if East was busy performing other tasks.

No evidence proved who prepared the deposit slips for the deposits made on March 6 and 7, 1997. Furthermore, the record does not establish the amount of the bank deposit for March 6 and March 7. Thus, the trier of fact could not conclude that East

- 7 -

prepared those deposits.  Moreover, the trier of fact could not have concluded that the absence of the sum of $6,600 on March 6 or 7 would have been immediately obvious to East, if she did in fact prepare the deposit slip on that day, or to the other cashier, who may have prepared the deposit.  The record proved that some of the deposits were for substantial sums of money -- for example, $330,640 was deposited on February 27 and larger sums were deposited on other days.

The evidence proved that a check register was prepared whenever money was received by a cashier.  The check register was a paper copy of a form that could be displayed on a computer monitor and printed after information was typed onto the form. This form could be accessed by the cashiers from their computer terminals.  Typically, transactions were entered on the form by typing the necessary information on the computer's keyboard when the form appeared on the monitor.  The cashier would then cause the computer to generate a paper copy of the form and data shown on the monitor.

The cashier testified as follows concerning the system:

Q  So anybody with access to the computer
system could pull up that register and enter
in the code?

A  Yes.

Q  When you are doing it on the screen, you
also type in your name as the one preparing
that particular register?

A  Yes.

Q  You didn't have any kind of password in order to enable you to enter in the name?

A  No.

Q  So if you wanted to, you could have entered instead the name of June Hodge, the name John Doe?

A  Yes.

Q  Or Cindy East?

A  Yes.

Q  If you pulled up work that had already been done on the screen for a register, it was possible, it would have been possible to type over some of the stuff that you had already done, or delete some of the stuff you had already done and type other information; that would have been possible?

A  Yes.

Q  And then if you had printed out a hard copy of that, it would have showed the new work that you substituted for the old work while the old work was still intact on that register?

A  Say that again.

Q  If you had pulled up a ledger sheet that had already be[en] done at the screen--

A  Uh-huh.

Q  --and you type in some different information

THE COURT:  Are you talking about this?

[DEFENSE ATTORNEY]:  Yes, one of those.

THE COURT:  The deposit and check register?

[DEFENSE ATTORNEY]:  Yes, the deposit and check register.

- 9 -

Q  If you pulled that up on the screen, one that you had already done, and then you typed in some different information, for example, instead of Russell Auto-Truck Parts as payor, and you typed in Covington Sales, but you left everything else on the register the same, if you had printed a copy, printed a hard copy of what was shown on the screen, what you would get back is an altered register?

A  Yeah.

The cashier also testified that some check registers consisted of the computer generated form with information handwritten in the appropriate spaces on the form.

The computer generated check register forms were not numbered sequentially as a receipt book might be.  Furthermore, the accounting system contained no duplicate copies of documents, no verification systems, no sequential transaction numbers, or any other system designed to leave an accounting trail.  For example, the person charged with reconciling the daily check registers with the daily bank deposits testified that "sometimes it might be a week later and sometimes a month later" that she received the bank deposit slips.  She also testified that the Department has instituted strict internal controls since these events and "[w]e can't use the computer [check register] forms anymore."

The department's comptroller acknowledged that the system was faulty and had been changed.  He testified as follows:

Q  Was there -- during the two years prior to April, '97, what procedure was there?  Was there any procedure to insure that

- 10 -

> information recorded on each individual check register was accurate?
>
> A  No, we did not have a separate place to check every place for accuracy.
>
> Q  For example, if there was nothing in place to check whether or not a recorded payment was in cash or in check, if that was recorded?
>
> A  The only procedure we had in place was that we had a person outside of the cashier's office to verify that the total dollars listed on these registers were indeed deposited in the bank.
>
> *       *       *       *       *       *       *
>
> Q  There was nothing in place to insure that a check register, if it were filled out on a particular day, went anywhere; in other words, if someone could take in money, deposit it, record it on the check register, get a receipt, and simply not deposit the money, bury the check register and it might never show up?
>
> A  I guess that's a possibility.
>
> Q  Has that changed?
>
> A  Yes.

Thus, even if East prepared the proper forms for the two March 6 payments that were unaccounted for, any person having access to the office could have removed the money and the supporting documents, or changed the supporting documents, without detection.

When the Commonwealth relies upon circumstantial evidence to prove the guilt of the accused, the following standard is applicable:

All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963).

The evidence in the record does not exclude the hypothesis that East collected the two payments on March 6, that she placed them in the open safe to be later tallied for deposit, and that the money and attached documents were removed from the safe before the deposit slip was prepared. The absence of a controlled accounting system leaves in doubt (1) whether East or some other person removed the cash and the corresponding check register for those cash payments or (2) whether someone created new check registers identifying other payors of the cash. The Commonwealth must prove beyond a reasonable doubt that East wrongfully and fraudulently converted the missing money. See Waymack v. Commonwealth, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987). When evidence is equally susceptible to two interpretations, one of which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt that

interpretation which incriminates the accused.  See Littlejohn v. Commonwealth, 24 Va. App. 401, 411, 482 S.E.2d 853, 858 (1997).

For these reasons, I would reverse all the convictions.